# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

MICHAEL DOTSON,          )
                               )
    Petitioner,           )
                               )
                               )     NO. 3:03-0021
                               )     JUDGE HAYNES
STATE OF TENNESSEE,     )
                               )
    Respondent.        )

## M E M O R A N D U M

Petitioner, Michael Dotson, filed this petition under 28 U.S.C. § 2241 et seq., seeking the writ of habeas corpus to set aside his state court conviction for first degree murder for which he received a life sentence. In earlier proceedings, the Court denied the Respondent's motion to dismiss the petition as untimely. (Docket Entry Nos. 14 and 18). From the parties' submissions, the petition can be decided upon the state court record. (See Docket Entry No. 36).

### A. Review of the Record

On April 27, 1998, petitioner pled guilty to the first degree murder and robbery of William Adams that occurred on May 1, 1997 in Wilson County, Tennessee. Petitioner received a life sentence for his convictions. The Tennessee Court of Criminal Appeals set forth the following facts that were bases for Petitioner's plea.[1]

> On the afternoon of May 5, 1997, the victim's wife, Eileen Adams, arrived home with her sister and found the victim lying in the driveway. The victim was dead and had been stabbed multiple times. Mrs. Adams and her sister noticed that the phone lines to the Adams' house had been cut, there had been forced entry into the home, and the victim's wallet, containing American Express and Sears credit cards, was missing. Mrs. Adams and her sister saw a black pickup truck, with two

---

[1]State appellate court opinion's findings can constitute factual findings under 28 U.S.C. § 2254(d). Summer v. Mata, 449 U.S.539, 546-47 (1981).

white males inside, near the Adams' home.

The police obtained a videotape showing the petitioner and his co-defendant, Tommy Beard, using one of the victim's stolen credit cards at a gas station on the day of the murder. According to the state, Mr. Beard would have testified that on the day of the murder, the petitioner drove to where Mr. Beard was staying, and Mr. Beard left with the petitioner in the petitioner's pickup truck. Mr. Beard noticed a bloody shirt, a bloody knife, and bloody gloves in the truck. When Mr. Beard asked the petitioner about the items, the petitioner said that he had murdered a man. The petitioner and Mr. Beard drove to an area near the murder scene to hide the items. However, upon seeing Mrs. Adams and her sister at the murder scene, the petitioner and Mr. Beard decided to hide the knife and gloves in some brush behind the petitioner's father's house.

The weekend after the murder, Davis Edwards and the petitioner drove to the petitioner's father's house, and the petitioner retrieved the knife. The petitioner told Mr. Edwards that the knife had been used in a murder. Later, Mr. Edwards saw the petitioner throw the knife into the middle of a pond. When Mr. Edwards found out that the petitioner had been implicated in a murder, Mr. Edwards called the police and told them about seeing the petitioner dispose of the knife. The police recovered the knife from the pond. Tommy Beard told the police that the bloody gloves were behind the petitioner's father's house. The police recovered the gloves, and DNA testing revealed that the victim's blood was on the gloves.

The record reflects that the police searched the petitioner's apartment pursuant to a search warrant in the early morning hours of May 29, 1997. At 2:00 a.m., the police arrested the    petitioner without an arrest warrant and took him to the Wilson County Jail. At 5:30 a.m., the petitioner signed a waiver of rights form and gave a written statement to the police. Sometime on the 29th, a mittimus was issued, ordering the petitioner's detention. According to the mittimus, the petitioner was "examined before" a judicial commissioner, and the commissioner found "sufficient cause" to believe the petitioner guilty of first degree murder. At 6:05 p.m. on the 29th, the petitioner signed another waiver of rights form and gave a second written statement to the police. Sometime the next day, May 30, Police Officer David Kennedy signed an affidavit of complaint against the petitioner, and an arrest warrant was issued. The affidavit of complaint provides,

The victim's American Express Credit Card was [s]tolen during the course of the [m]urder. Michael Stanley Dotson along with a second individual has been recorded on a business surveillance video camera attempting to use the victim's stolen American Express Credit Card approximately 9-12 hours after the [m]urder. Michael Stanley Dotson has been interviewed by your affiant and/or other law enforcement personnel working with your affiant. In said interview Michael Stanley [Dotson] has admitted being at the residence of the victim at the

2

time the victim was killed, and has admitted to disposing of the murder weapon
and gloves which were worn during the course of the murder. Based on
information supplied by Michael Stanley Dotson your affiant's agency has
recovered a pair of gloves which appeared to have human blood stains on them at
the location supplied by Michael Stanley Dotson....

At 9:25 p.m. on the 30th, the petitioner signed a third waiver of rights
form and gave a third written statement to the police. In that statement, the
petitioner admitted killing the victim. The state filed a notice to seek a sentence of
life without parole. On April 27, 1998, the petitioner pled guilty, and the trial
court sentenced him to life imprisonment.

Dotson v. State, 2002 WL 369901 at ** 1-2 (Tenn. Ct. Crim. App. 2002)

In 1999, Petitioner, filed a state petition for post-conviction contending that his trial

counsel provided ineffective assistance by: (1) failing to challenge the admissibility of the

petitioner's statements at his arrest; (2) failing question the legality of his detention; and (3)

failing to investigate and develop an alibi defense. The trial court denied his petition and on his

appeal of that order, the Tennessee Court of Criminal Appeals made the following factual[2]

findings on his claim:

At the hearing for post-conviction relief, the petitioner's primary trial
attorney testified that at the time he was retained to represent the petitioner, he
had been an attorney for a little over two years and had conducted two criminal
jury trials. He said that the petitioner did not have an alibi defense and that the
petitioner never mentioned having an alibi or alibi witnesses. He said that when
the state filed for a notice of alibi, the defense responded that it would not rely on
an alibi defense. He said that before filing the response, he discussed it with the
petitioner. He said that although the petitioner denied committing the murder, the
petitioner admitted being at the murder scene when the victim was killed.

The attorney acknowledged that he discussed with the petitioner
everything the defense received from the state. He also acknowledged filing a
motion to suppress the petitioner's three written statements and that the motion
raised seven issues as to why the statements should be suppressed. He

---

[2]As state earlier appellate court findings are factual findings under 28 U.S.C. § 2254(d).
See n. 1.

3

acknowledged that the motion to suppress did not allege a Fourth Amendment violation of the petitioner's constitutional rights and that he did not see any basis for alleging such a violation.

On cross-examination, the attorney testified that at the time he was retained to represent the petitioner, he was not a member of the National Association of Criminal Defense Lawyers and had not attended any specialty criminal law seminars. However, he said that he felt comfortable taking the petitioner's case. He said that he became involved with the petitioner's case after the preliminary hearing had taken place. He acknowledged having an opportunity to review the preliminary hearing transcript and the May 30 arrest warrant and said that he knew the petitioner had been arrested without a warrant on May 29, 1997. Upon reviewing the affidavit of complaint, the attorney acknowledged that the affidavit was based in large part on statements that the petitioner gave to the police after the petitioner's warrantless arrest. However, he said that he did not believe this violated the petitioner's Fourth Amendment rights. He said that the petitioner was fairly adamant about wanting to go to trial.

Post-conviction counsel also showed the witness a Right to an Attorney form signed by a judicial commissioner on May 29, 1997, and setting the petitioner's arraignment for June 12, 1997. The petitioner's trial counsel acknowledged that although there was a line on the form for the petitioner's signature and a box to check if the petitioner refused to sign the form, the petitioner had not signed the form and the box was not checked. The witness acknowledged that he was familiar with Rule 5(a), Tenn. R. Crim. P., and that a Rule 5(a) violation was a factor to be considered when analyzing a possible Sixth Amendment violation.

The attorney acknowledged that the state provided him with a statement taken from the petitioner's co-defendant, Tommy Beard. He acknowledged that in the statement, Mr. Beard said that at 10:47 a.m. on the day of the murder, Mr. Beard placed a telephone call to the petitioner's home in Hermitage, Tennessee and talked to the petitioner. The attorney also acknowledged that the victim's death certificate listed the victim's time of death as 10:38 a.m. and that it took approximately forty-five minutes to drive from the victim's home to the petitioner's home. He said that he had considered the evidence as a possible alibi defense for the petitioner.

The petitioner's co-counsel testified that at the time of the murder, he had been practicing law since 1977 and worked for the Public Defender's Office. He said that he was appointed to represent the petitioner and that he conducted the petitioner's preliminary hearing. He said that after the preliminary hearing, the petitioner retained an attorney and that he was removed from the petitioner's case. He said that sometime later, he was reappointed by the trial court to assist the petitioner's retained attorney.

4

The petitioner's co-counsel testified that nothing indicated to him that the petitioner had been unlawfully detained at the Wilson County Jail. He said that he thought that the petitioner's three statements to the police would be admissible in court. He said that the defense investigated the possible alibi defense raised by Mr. Beard's telephone call and the victim's time of death but never found anything to support the alibi defense. He said that the petitioner never offered an alibi.

On cross-examination, the petitioner's co-counsel acknowledged that the petitioner's statements to the police were very damaging and that he would have recommended a plea to the petitioner. He also acknowledged that some of the petitioner's statements to the police were used to establish probable cause in the affidavit of complaint. He said that although the petitioner's co-defendant was the person actually using the victim's credit card in the surveillance video, the petitioner also was present. He said that after he was reappointed to the petitioner's case, he obtained experts and assisted retained counsel with preparing motions. He said that there was not a long time delay between the defendant's arrest and issuance of the petitioner's arrest warrant. He acknowledged that a commissioner signed a mittimus on May 29. He said that the defense could have argued at trial that there were problems with the state's time line of the murder. He said that the petitioner never indicated to him that the petitioner was at the scene of the crime or murdered the victim. He said that he did not recall the petitioner saying anything about not being allowed to make a telephone call.

Id. at pp. 3-4.

Citing federal and state law, the Tennessee Court of Criminal Appeals found that none of

Plaintiff's contentions had merit due to his lack of proof:

The petitioner has failed to produce any evidence regarding lack of probable cause for his arrest. Moreover, he has failed to produce any evidence that the police delayed obtaining an arrest warrant in order to gather additional evidence against him. We note that the language of the May 29 mittimus indicates that the petitioner appeared before a judicial commissioner, who determined probable cause at that time. The petitioner has not demonstrated that the police arrested him without probable cause or that his probable cause hearing was delayed unreasonably. He is not entitled to relief.

* * *

As previously noted, the petitioner did not testify at the post-conviction hearing and called no witnesses. The only witnesses who testified at the post-conviction hearing were the petitioner's two trial attorneys, and neither of them testified as to the voluntariness of the petitioner's statements to the police.

5

Without presenting any proof at the post-conviction hearing that he made his statements involuntarily, the petitioner cannot demonstrate that he was prejudiced by his trial attorneys' failure to allege the involuntariness in a motion to suppress. The petitioner is not entitled to relief on this issue.

### III. ALIBI DEFENSE

[B]ased upon the record before us, we do not believe that the petitioner can prevail on this claim. Both of the petitioner's trial attorneys testified at the post-conviction hearing that the petitioner never offered an alibi or alibi witnesses. In addition, the petitioner's lead trial counsel testified that the petitioner told him that the petitioner was present at the murder scene when the victim was killed. The petitioner's post-conviction counsel alluded through his questioning of trial counsel that phone records and the victim's time of death provided the petitioner with an alibi defense. However, the petitioner did not testify and offered no witnesses to support an alibi defense. Without offering any proof as to an alibi, the petitioner cannot demonstrate that he was prejudiced by his trial attorneys' failure to investigate and raise an alibi defense. The petitioner is not entitled to relief.

Id. at pp. 6-7. The Tennessee Supreme Court denied Petitioner's application of permission to appeal. (Docket Entry No. 1, Petition at Exhibit L).

### B. Conclusions of Law

Petitioner's habeas petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Linda v. Murphy, 521 U.S. 320, 336 (1997). Under the AEDPA, federal courts may not grant habeas relief for claims adjudicated on their merits in a state court proceeding, unless that state court proceeding:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding:

6

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court stated that a state court judgment is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." In such instances, the Supreme Court held that a federal habeas court may grant a writ. Id. The Supreme Court interpreted the language "clearly established Federal law, as determined by the Supreme Court of the United States"as referring to "holdings as opposed to dicta" of its decisions at the time of the state court decision. Id. at 412. Moreover, the relevant analysis is "to apply a rule of law that was clearly established at the time the Petitioner's state court conviction became final." Id. at 390. In Bell v. Cone, 535 U.S 685 (2002), the Court reiterated that AEDPA modified a federal court's role in reviewing state prisoner applications "in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under the law."

Under the "unreasonable application" clause, the Supreme Court stated that a state court judgment results in an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. The district court "must presume that all determinations of factual issues made by the state court are correct unless the Defendant can rebut that presumption by clear and convincing evidence." Mitchell v. Mason, 325 F.3d 732, 738 (6th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1).

Yet, the Supreme Court explained that a state court's application of clearly established

7

federal law must be "objectively unreasonable," and a federal habeas court may not grant habeas

relief "simply because that court concludes in its independent judgment that the relevant decision

applied clearly established federal law erroneously or incorrectly. Rather, that application must

also be unreasonable." Id. at 411. A state court's application of federal law is unreasonable and

habeas relief may be granted if the "state court decision is so clearly incorrect that it would not

be debatable among reasonable jurists." Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1998)

(quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5 th Cir. 1996)).

### Ineffective Assistance of Counsel

As to Petitioner's ineffectiveness of his counsel claims, in Mitchell, the Sixth Circuit

identified two broad categories of ineffective assistance of counsel claims: (1) the actual or

effective absence of counsel at a critical stage of the proceeding for which a presumption of

prejudice arises; and (2) counsel whose performance was deficient on specific issues and that

deficiency was demonstrably prejudicial to the defendant. As that Court explained:

> In United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657
> (1984) . . . the Supreme Court held that an appeals court must reverse a criminal
> defendant's conviction "without any specific showing of prejudice to defendant
> when counsel was either totally absent, or prevented from assisting the accused
> during a critical stage of the proceeding." In Williams, the Supreme Court
> confirmed the vitality of this "per se" approach, noting that while the Strickland
> v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), test for
> ineffective assistance of counsel, requiring proof of deficient performance and
> prejudice provides guidance for resolving virtually all ineffective assistance of
> counsel claims, there are "a few situations in which prejudice may be presumed."
> Williams, 529 U.S. at 391 . . . (citing Strickland, 466 U.S. at 692, 104 S.Ct. 2052).
> We have recently applied the presumption-of-prejudice test to a claim of
> ineffective assistance of counsel. Olden, 224 F.3d at 568 (prejudice is presumed
> when counsel is absent during prosecution's presentation of evidence that
> implicates defendant because such absence occurred during "critical stage" of
> trial).

8

325 F.3d at 740. Within the first category are three types of presumptive ineffectiveness:

> The first is the complete denial of counsel, in which "the accused is denied the presence of counsel at 'a critical stage.'" Bell, 122 S.Ct. at 1851 (quoting Cronic, 466 U.S. at 659, 104 S.Ct. 2039). The second is when counsel "'entirely fails to subject the prosecutions' case to meaningful adversarial testing.'" Id. (quoting Cronic, 466 U.S. at 659, 104 S.Ct. 2039). The third is when counsel is placed in circumstances in which competent counsel very likely could not render assistance.

Id. at 742.

Here, from the review of the state court record, the Court concludes that Dotson's ineffective assistance of counsel claims fall within category two under Strickland standard.

To prevail on these claims of ineffective assistance, Dotson must demonstrate that, under the totality of the circumstances, his trial counsel performed deficiently and that his counsel's performance resulted in prejudice to him. Strickland, 466 U.S. at 695. As the Supreme Court has explained:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687.

As to the "performance" inquiry, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. Under Strickland, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691. As to the duty to investigate:

9

These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. As the Court of Appeals concluded, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decision, just as it may be critical to a proper assessment of counsel's other litigation decisions.

Id at 690-91.

In the context of a guilty plea, the Sixth Circuit described defense counsel's obligations to the defendant as follows:

The decision to plead guilty--first, last, and always--rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction.

On the other hand, the attorney has a clear obligation to fully inform her client of

10

the available options. We have held that the failure to convey a plea offer constitutes ineffective assistance, but in the context of the modern criminal justice system, which is driven largely by the Sentencing Guidelines, more is required. A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available. In a system dominated by sentencing guidelines, we do not see how sentence exposure can be fully explained without completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time. . . The criminal defendant has a right to this information, just as he is entitled to the benefit of his attorney's superior experience and training in the criminal law.

Smith v. United States, 348 F.3d at 552 and 553. (citation omitted).

As to judicial deference to defense counsel's strategic choices, Wiggins v. Smith, 539 U.S. 510 521 (2003) makes it clear that defense counsel's "strategic choices made after less than complete investigations are reasonably precise to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Counsel's failure "to conduct constitutionally adequate pretrial investigation into potential evidence" can "hamper[] [their] ability to make strategic choices." Harris v. Bell, 417 F.3d 631, 639 (6th Cir. 2005). See also Horton v. Zant, 941 F.2d 1449, 1462 (11th Cir. 1991) ("[O]ur case law rejects the notion that a 'strategic' decision can be reasonable when the attorney has failed to investigate his options and make a reasonable choice between them.")

As the Sixth Circuit observed on whether counsel's failures were constitutionally infirm, that:

> The Supreme Court recognized that in the context of ineffective assistance claims based on counsel's `failure to investigate,' the temptation to rely on hindsight is particularly strong. Consequently, the Court made clear that `strategic choices made after thorough investigation of law and facts relevant to

11

plausible options are virtually unchallengeable....' <u>Id</u>. at 690, 104 S.Ct. at 2066.
However, `strategic choices made after less than complete investigation are
reasonable precisely to the extent that reasonable professional judgments support
the limitations on investigation.  In other words, counsel has a duty to make
reasonable investigations or to make a reasonable decision that makes particular
investigations unnecessary." <u>Id</u>. at 690-91, 104 S.Ct. at 2066 (emphasis added).

<u>Sims v. Livesay</u>, 970 F.2d 1575, 1579-80 (6th Cir. 1992) (emphasis added).

A court must examine not only to the individual errors of counsel, but must also view the

effect of the errors cumulatively.  <u>Draper v. Adams</u>, 215 F.3d 1325, 2000WL712376 *3 (6th Cir.

May 23, 2000).   Claims of ineffective assistance of counsel present mixed questions of law and

fact.  <u>Mitchell</u>, 325 F.3d at 738.

As to Petitioner's claim that his trial counsel was ineffective for failing to challenge his

warrantless arrest and detention before his appearance before a judicial officer, a habeas corpus

petitioner may assert a Sixth Amendment claim based on his counsel's failure to move for the

suppression of evidence that should have been excluded under the Fourth Amendment.

<u>Kimmerlman v. Morrison</u>, 477 U.S. 365, 382-83 (1986); <u>Joshua v. Dewitt</u>, 341 F.3d 430, 437-38

(6th Cir. 2003).  Where defense counsel's failure to litigate a Fourth Amendment claim is cited

as ineffectiveness, a defendant must prove a meritorious Fourth Amendment claim to prove a

reasonable probability that the result would have been different absent the excludable evidence.

<u>Joshua</u>, 341 F.3d at 437-38.  Petitioner did not present any evidence on this claim.

The Tennessee Court of Criminal Appeals and the trial court found a lawful arrest and

detention.  Petitioner did not call any witnesses at his post-conviction hearing to challenge the

information that was known by the officers at the time of Petitioner's arrest.  The Court must

consider the facts in the Tennessee Court of Criminal Appeals' decision to be presumptively

correct and any contrary showing must be "clear and convincing evidence."  28 U.S.C. §

12

2254(e)(1).

   To the extent Petitioner relies on the current record,[3] in the habeas context, evidence in the state court record must be viewed "in the light most favorable to the prosecution" <u>Jackson v. Virginia</u>, 443 U.S. 307, 318-19 (1979). Here, the murder occurred on May 5th, but Petitioner was not arrested until May 29th. The victim's wife and sister described a black pickup truck with two white males near their home when they arrived. The police had a videotape of Petitioner and his co-defendant at the service station using the victim's credit card within 9 to 12 hours after the murder. Davis Edwards called the police to tell them about Petitioner's hiding of the knife, the disposal of the bloody gloves and Petitioner's statement that he had murdered a man. The Tennessee Court of Criminal Appeals found that Edwards called the police to implicate Petitioner. An inference is that Edwards was not in custody at that time. Edwards's statements, the videotape and recovery of the knife clearly support probable cause. This conclusion is corroborated by the search warrant issued by a judge to search Petitioner's residence before his arrest. A police officer can make a warrantless arrest if there is probable cause that the individual who is arrested has committed a crime. <u>United States v. Sokolow</u>, 490 U.S. 1, 7 (1989). This claim lacks merit.

   Petitioner's next claim is for unreasonable delay in being brought before a judge afer his arrest. Under the Fourth Amendment, once a defendant is in custody, 48 hours is the presumptive time limit for the Defendant's appearance before a judicial officer. <u>County of</u>

_____

   [3]Petitioner asserts that the State stipulated to the truth of the assertions in his petition, but the record does not support such a stipulation. The record reflects an agreed order withdrawing the subpoenas for certain police officers (Docket Entry No. 22, Addendum No. 9), but order was related to the State's motion to quash. <u>Id.</u> The record does not any agreement in the testimony of any of the officers identified in the agreed order to Petitioner's warrantless arrest.

Riverside v. McLaughlin, 500 U.S. 44, 56 (1991). Petitioner was arrested at 2:00 a.m. on May 29th. As the Tennessee Court of Criminal Appeals found, Petitioner appeared before a judge on May 29th. Consistent with McLaughlin, there was not any unnecessary delay here.

At a minimum, Petitioner qualified as a material witness given his association with Brown. Petitioner was present when Brown used the victim's credit card and was traveling in a black truck as described at the murder scene. As a material witness, Petitioner could be subject to a warrantless arrest and held in custody given probable cause of crime and the persons connection thereto. White by Swafford v. Gerbitz, 872 F.2d 457, 460-61 (6th Cir. 1989) (analyzing Tenn. Code Ann. § 40-11-120 and 40-11-139). These claims lack merit.

With these conclusions, the Fourth Amendment cannot be used to bar the Defendant's subsequent statements to the officers. Thus, Petitioner's reliance on Taylor v. Alabama, 457 U.S. 687, 690, 102 S.Ct. 2664 (1982) and other cited decisions is misplaced.

As to the suppression of Petitioner's post-arrest statements to police officer, Petitioner did not present any evidence in the post-conviction hearing to support a finding of a coerced confession, as the Tennessee Court of Criminal Appeals found. Petitioner has not presented such proof in this action. The state court's decision is not unreasonable or shown to be contrary to federal law. See McCall v. Dutton, 863 F.3d 454, 459 (6th Cir. 1988) (describing a three part test for involuntary statements, including that "petitioner must prove that his will was overborne because of the coercive activity in question") (citing Colorado v. Connelly, 479 U.S. 157, 169-70 (1986).

Petitioner's next claim is for defense counsel's failure to explore an alibi defense. For this contention, Petitioner notes that the death certificate lists the "time of injury" at 10:30 a.m.

Thomas Beard's statement was that Petitioner called him from his apartment at 10:47 a.m. Petitioner asserts that given that the driving time between the victim's home and his residence is approximately 37 and 45 minutes, this evidence tends to show that Petitioner could not have committed the crime. In his dispute with the Tennessee Court of Criminal Appeals findings, Petitioner notes that Williams one of Petitioner's trial attorneys testified that he did not consider an alibi defense. (Docket Entry No. 1, Exhibit F, Petition thereto State post-conviction Evidentiary Hearing Transcript at p. 43).

Yet, the victim's grocery receipt shows a time of 9:22 a.m. John Richardson, the victim's neighbor, told police he saw the victim returning home between 10 and 10:30 a.m.. The factual inference is that the petitioner killed the victim in his driveway as early as 10:00 a.m. that would be consistent with his telephone call to Beard at 10:37 a.m. from his residence. Howard Chamber, one of Petitioner's his co-defense counsel was aware of the time difference between Petitioner's telephone call to Edwards and the autopsy's estimate of time of death "was certainly one of the arguments that we had in the case." Id. at 68.

Under Strickland "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. Although "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," an attorney's "particular decision not to investigate must be directly assessed for reasonableness in all the circumstances." Id. at 691.

Here, Petitioner told his attorneys that in fact, he was at the murder scene when the crime was committed. The other evidence included petitioner's possession of the victim's wallet, the bloody gloves that Petitioner hid behind his father's home and Edwards' statements. Defense

15

counsel's failure to pursue an alibi defense must be evaluated under the facts of each case. Lindsey v. Smith, 820 F.2d 1137, 1152 (11th Cir. 1987) and Knox v. Johnson, 224 F.3d 470, 479 (5th Cir.2001). Given Petitioner's admissions to his counsel and the other proof, his counsel's pursuit of an alibi defense would raises serious issues. See Petrone v. U.S., 1985 WL 1207 (S.D.N.Y. May 7, 1985). In a word, Defense counsel cannot manufacture evidence given Petitioner's admissions.

Another aspect of this claim is that his counsel did not adequately investigate the knife that was recovered from the pond. This ground was never presented to any Tennessee court. Petitioner's counsel obtained court approval for a forensic expert, but the evidence does not reflect any testing of the knife prior to the plea hearing. In any event, there was not any evidence presented on this claim at the state post-conviction hearing. Petitioner's counsel did not have the knife examined to reflect any weaknesses this element of the State's case.

To establish prejudice due to his counsel's errors or omissions, Petitioner must establish a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Williams, 529 U.S. at 390-91. In a word, "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." Strickland, 466 U.S. at 694.

The Tennessee Court of Criminal Appeals ruled that Plaintiff's claims failed for lack of proof, including the Petitioner's failure to testify. Based upon this state court record, this Court concludes that the Tennessee Court of Criminal Appeals' decision shows a lack of prejudice

Case 3:03-cv-00021   Document 37   Filed 10/27/05   Page 16 of 17 PageID #: 28

related to these claims. This Court concludes that the state court's decision is neither contrary to nor an unreasonable application of federal law. Thus, the petition should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the ⟨handwritten⟩ 27th day of October, 2005.

WILLIAM J. HAYNES, JR.
United States District Judge